MIDDLE DISTRICT, HARRISBURG, 1852.

## Lancaster County *versus* Dern.

1. It is the duty of a coroner to inquire into the cause of all violent or extraordinary deaths.
2. When death occurs from any violence done to a person by another, although such violence may not suddenly terminate the life of the party injured, it is still the duty of the coroner to hold an inquest. Per LONG, J., Common Pleas, approved by Supreme Court.

ERROR to the Court of Common Pleas of *Lancaster county.*
The questions arose on the following stated case.

"Frederick Dern, the plaintiff above named, was regularly elected, and duly commissioned coroner of Lancaster county; whereby he became fully authorized and empowered to exercise all the duties, rights, privileges, and functions, and also became entitled to receive all the fees, perquisites, &c., to the said office of coroner appertaining."

"On Saturday, the 10th day of January, A. D. 1852, a concussion or collison took place in East King Street, in the city of Lancaster, between the sleighs of John Wittlinger and Samuel H. Slaymaker, whereby a certain Catharine Lawcomer, of the city of Lancaster, sustained an injury by the shaft, or some other part of Wittlinger's sleigh, striking her immediately above the eye, and penetrating the brain. Surgical aid was immediately called in, and the said Catharine, received all the care and attention that the exigencies of the case required, till the 14th day of January, 1852, when she died, in consequence of the wounds received by said concussion or collision.

"On the 15th of January, 1852, the plaintiff above named, in the exercise of his said office as coroner, proceeded to and actually did hold upon the view of the body of the said Catharine Lawcomer, having thus died in the county of Lancaster, upon the oaths and affirmations of twelve good and lawful men of the county aforesaid, an inquisition.

"After having so held the inquisition as aforesaid, and having paid the expenses thereof, the plaintiff presented his bill for the same to the commissioners of Lancaster county aforesaid for payment, by an order to be drawn by them in favor of said plaintiff, for the amount thereof, upon the treasurer of Lancaster county; but the said commissioners refuse to pay the costs and expenses of the said inquisition, and for interring the body of the said Catharine Lawcomer, deceased, as by the inquisition,

receipts and exhibits herewith produced, and made part of this case stated, more fully appears.

"Said Catharine left an estate of about $50.

"If upon this statement of facts, the court should be of opinion that the plaintiff is entitled to recover, then judgment to be entered in favor of the plaintiff, for the sum of $14.25, with costs of suit; if not, then judgment to be entered for the defendant. Either party to have the right to sue out a writ of error to the next term of the Supreme Court."

Upon which after argument, the court, (LONG, P.,) entered judgment for plaintiff, and delivered the following opinion.

"According to the facts detailed by the case stated, it appears that on Saturday, the 10th day of January, A. D. 1852, an injury was inflicted on a certain Catharine Lawcomer, by reason of a concussion or collision taking place between the sleighs of John Wittlinger and Samuel H. Slaymaker, that in consequence of the injury thus inflicted upon her, she languished until the 14th of the same month, when she died. On the next day the plaintiff, in the exercise of his office as coroner, proceeded to and held upon the view of the body of the said Catharine Lawcomer, upon the oaths and affirmations of twelve men, an inquisition. After the holding of the inquisition, and having paid the expenses thereof, the plaintiff presented his bill for the same, to the commissioners of Lancaster county for payment, but the same was refused to be paid by them.

"The payment of the plaintiff's claim is principally resisted on the ground, that the inquest was improperly held; that the case was not within the jurisdiction of the coroner, and that, therefore, he cannot claim costs from the defendants for holding the inquest.

"There is no law that we are aware of, which defines all the subjects of inquiry for the coroner's inquest. It is true, that the statutes of 4 Ed. I., § 2, and 3 Hen. VII., (a portion of each of which statutes are in force with us,) command the coroner to go to the place where any one is slain, or has suddenly died, and inquire into the cause of the death; but it has been observed that these statutes, being wholly directory, and in affirmance of the common law, the coroner is not thereby restrained from any branch of his power, nor excused from any part of his duty, not mentioned in them, and which was incident to his office before.

"In this State, the general understanding of his duty is, that he is to inquire into the cause of all violent or extraordinary deaths. It is frequently of great importance to the administration of justice, when the case becomes the subject of legal investigation, that deaths occurring by violence should be legally inquired into by the coroner; and should he in a case of that kind neglect to do so, he would be justly censurable, and might render

[Lancaster County *v.* Dern.]

himself obnoxious to the law for a neglect of duty. Now, in the case under consideration, the death of the person was not of an ordinary character, but one of violence, and in our opinion, a case strictly within the supervision of the coroner; that it was his duty to ascertain with as much precision as possible, the nature and cause of her death.

" It is contended, that the death should not only be violent, but also sudden, and that both these circumstances must concur to give the coroner jurisdiction; that inasmuch as Catharine Lawcomer, languished for several days after receiving the injury, therefore, although her death was violent, but not being sudden, the coroner had no legal right to hold the inquest. We cannot take this view of the law, for we are satisfied that, when the death occurs from any violence done to a person by another, although such violence may not terminate the life of the party injured suddenly, it is still the duty of the coroner to hold an inquest, (4 Blk. Com. 274,) for otherwise some of the greatest benefits resulting from the office of coroner would be lost.

" Another part of the defence is, that the inquisition is imperfect. Whether that can be inquired into collaterally, we are not now prepared to say, for in our opinion the imperfections, if any do exist, are not of such a character as to avoid the inquisition.

" It is also contended, that the slayer of the deceased, and not the county, is liable. In answer thereto, we would observe that the case stated does not declare that any person was the slayer.

" Some of the items in the bill of costs were also objected to as being illegal. As we are not authorized by the case stated, even if we should be of the opinion that these exceptions were well taken, to modify or alter such bill, it would be a useless waste of time to inquire into the correctness of the objections; for the case stated requires us, if we should be of opinion that the plaintiff is entitled to recover, then judgment to be entered in his favor for the sum of $14.25, and not for a portion only, and as our opinion is that the plaintiff is entitled to recover, we therefore direct judgment to be entered in his favor for that sum, viz : $14.25,"

The entering judgment in favor of plaintiff on the case stated, was the error assigned.

*D. G. Eshleman,* for plaintiff in error.—The office of coroner is an ancient common law office ; but his duties and rights at common law seem to be entirely forgotten. The origin of the jurisdiction now exercised by coroners, is to be found in the statute, 4 Ed. I., § 2, and 3 Hen. VII., c. 1. It seems to have been a common law duty of the coroner to inquire of the death of those who die in prison, and it is settled that the statute of

[Lancaster County *v.* Dern.]

4 Ed. I., § 2, is directory, and in affirmance of the common law, and, therefore, though the statute does not mention cases of death in prison, the coroner ought to inquire of such. Robert's Dig. tit. Cor. 100, 101, 102, 103, 104.

In England, then, the subjects of inquiry for the coroner, are cases of *sudden and violent death*, whether from the visitation of God, by misfortune, as if sudden death ensue in consequence of a fall or other casualty; or by suicide, or by the hands of another, whether by murder, manslaughter, in self-defence, or by accident; and also of those who die in prison. 2 Hale, P. C., c. 8, p. 62; Roberts, Dig. 104; 1 Black. Com. 348.

In Pennsylvania, there is no general definition of the duties or powers of the coroner. His powers are certainly no greater than they are at present in England; and they are not as great in England now as they were, when the statutes of 4 Ed. I., and 3 Hen. VII., were passed. 1 Black. Com. 347.

In this case, it is claimed for the coroner, that he is a high judicial officer, guided only by his own discretion, and subject to no restraint, and as such, the courts have no control over his action. Such is not the law. He is a judicial officer, but his jurisdiction is limited by the very law which gives him that jurisdiction. His jurisdiction is also controlled by the courts; for his inquiry *must* be *super visum corporis;* it *must* be at the place where the death happened; where the body cannot be found *no inquisition can be taken,* &c. 1 Black. Com. 348; Robert's Dig. 103; 2 Hawk, P. C. c. 9, § 23, p. 70.

The facts of this case are, that the deceased was stricken immediately above the eye, by the shaft of the sleigh of John Wittlinger, on the 10th of January, A. D. 1852; that surgical aid was called in, and she received all the care and attention that the exigencies of her case required, till the 14th of January, 1852, when she died. Was that a " *sudden and violent*" death? Was it even a " *sudden*" death? Can it be brought within any of the modes of death contemplated by the law?

But even if the coroner has the *right* to hold an inquisition, the court will judge whether or not it was necessary, and if the inquisition was unnecessary, no costs will be allowed. *The King* v. *The Justices of Kent,* 11 East, 229.

That case settles two points. 1st. That the courts will exercise jurisdiction over the proceedings of a coroner. 2d. That in cases of sudden death even, the coroner's inquisition is not always necessary. If that case is authority, the coroner cannot recover his costs in this case. Jervis on Coroners, 24.

But even if the coroner had jurisdiction in this case, and the inquisition was properly taken, he has no right to his costs. Roberts, Dig. 105, and cases there cited; *Rex* v. *Evett,* 6 B. &

[Lancaster County *v.* Dern.]

C. 247; and 9 D. & R. 233; *Reg v. Brownlow*, 11 Ad. & E. 119; 8 Dowl. P. C. 157.

If the inquisition is good, the slayer must pay the costs if he is worth it, if not, the county. The common law gave no fees to the coroner. The English statutes, giving fees, are not in force here. The coroner, therefore, must claim under the Act of 28th March, 1814, § 19, 6 Smith's Laws, 228, which throws the costs upon the slayer. If this inquisition finds anything at all, it is that John Wittlinger was the slayer, and the inquisition is made part of the case stated; therefore the coroner must prove that Wittlinger is worth nothing, before he can call upon the county.

*Ford*, for defendant in error.—The coroner is a judicial officer, and as such, is not answerable for mistakes, or errors of his judgment, in a matter of which he has jurisdiction. 1 Salk, 397; 3 Jac. Law Dic. 548, tit. Judges. He is only a ministerial officer, when he acts as the sheriff's substitute. 1 Blac. Com. 349. In holding inquests, he is therefore a judicial officer, and cannot be controlled by the county commissioners, unless the power is specially conferred upon them. He has authority to pledge the responsibility of the county, for the compensation of ancillary services, which are necessary to the proper execution of his office, and which he could by no other means command. *Allegheny County* v. *Watts*, 3 Barr, 462. The coroner has power to summon an inquest, and as incidental to this power, he has the right to use all lawful means to render it effective. 2 Bac. Abr. (Bouv. ed.,) tit. Coroner, 429.

To prevent the abuses of the judicial power of the coroner in Philadelphia county, the Act of April 16, 1845, Dunlop's Laws, (2d ed.) p. 1065, § 9, was passed.

Opinion.

PER CURIAM.—This judgment is affirmed for the reasons given by the judge who heard and determined the cause in the Common Pleas.

Judgment affirmed.